IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TAMARA HINKLE-MOORE,

        Plaintiff,

    v.                             Civil Action 2:24-cv-262
                                        Magistrate Judge Kimberly A. Jolson


POSTMASTER GENERAL
LOUIS DEJOY,

        Defendant.


<u>OPINION AND ORDER</u>

      This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 16).  For the following reasons, the Motion is **DENIED in part.**  Plaintiff's race discrimination claim based on loss of pay may proceed.  The Court **HOLDS** the remainder of the Motion **IN ABEYANCE** consistent with this Order.  Plaintiff may file a Second Amended Complaint **within fourteen (14) days**.  Additionally, because Plaintiff's Amended Complaint is the operative complaint, Defendant's first motion to dismiss (Doc. 13) is **DENIED as moot.**

I.      BACKGROUND

      This matter, for which the parties consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), alleges employment discrimination against Louis DeJoy, Postmaster General of the United States Postal Service ("USPS").  (*See generally* Doc. 14 (amended complaint)).  In brief, Plaintiff Tamara Hinkle-Moore claims she suffered discrimination at work because of her race and age.  (*Id.* (alleging violations of Title VII of the Civil Rights Act and the Age Discrimination in Employment Act ("ADEA")));  *see* 42 U.S.C. §§ 2000(e), *et seq.*; 29 U.S.C. §§ 626, *et seq.*

      On January 8, 2022, Defendant hired and assigned Plaintiff, a Black woman born in 1964, to

work at a post office in Pickerington, Ohio.  (Doc. 14 at ¶ 10).  Though she does not expressly name her position, it seems that Plaintiff worked as a mail carrier.  The position had a three-month probationary period (*id.* at ¶ 15), and Plaintiff alleges that Defendant discriminated against her on the basis of race and age during this trial time.  Examples include: (1) Plaintiff's younger white coworkers received more training than she did; (2) Defendant refused to reinspect Plaintiff's carrier route that was previously assigned to another employee and then compared Plaintiff's productivity to that younger, white employee; (3) Defendant made Plaintiff provide her electronic passwords to other white employees who used them without discipline; (4) Plaintiff's work scanner did not properly record her work, route time, and "other parts of her employment" because her supervisor refused to replace it even though he replaced her white coworkers' scanners; and (5) Defendant did not pay Plaintiff for several days she worked even though her white coworkers were paid for similar time.  (*Id.* at ¶¶ 15–16, 27, 34).

After the probationary period ended on April 19, 2022, the Postmaster of the Pickerington Post Office ("the Postmaster"), a white woman, notified Plaintiff that her performance and attendance were unsatisfactory and she would be terminated.  (*Id.* at ¶ 13; *see also* Doc. 16-2 at 2 (notice of termination "effective immediately upon [Plaintiff's] receipt")).  Plaintiff then contacted the Postmaster who told her that "she was indeed being fired unless she agreed to be transferred to a different facility."  (Doc. 14 at ¶¶ 17, 19).  Plaintiff agreed, and Defendant transferred her to a facility in nearby Columbus.  (*Id.* at ¶ 19).

At base, Plaintiff claims Defendant discriminatorily disciplined and transferred her when white and younger employees were not treated that way.  (*Id.* at ¶¶ 28, 35).  Plaintiff filed a complaint with the USPS Equal Opportunity Office ("EEO"), which issued a Notice of Final Action on October 24, 2023.  (*See* Doc. 14-1).  Plaintiff then filed this lawsuit.  (*See* Doc. 1).  Plaintiff seeks compensatory damages under Title VII and the ADEA, costs, and fees.  (Doc. 14 at 6).  Defendant subsequently filed

a motion to dismiss Plaintiff's Amended Complaint in its entirety for failure to state a claim upon which relief may be granted. (Doc. 16). Plaintiff responded (Doc. 20), and Defendant replied (Doc. 21). This matter is ripe for review.

## II.     STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a complaint "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555; *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (noting that a plaintiff must give specific, well-pleaded facts, not just conclusory allegations). In other words, while "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" rule, the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78 (quotation marks and citations omitted).

## III.     DISCUSSION

The Court considers Plaintiff's claims of race and age discrimination in turn. Additionally, the Court evaluates Defendant's argument that it should consider two exhibits attached to the Motion to Dismiss at this stage of the litigation.

A.      **Exhibits Attached to the Motion to Dismiss**

As a threshold matter, Defendant asks the Court to consider two exhibits: an order and entry of judgment of the U.S. Equal Employment Opportunity Commission ("Exhibit A"); and a U.S. Postal Service employee evaluation and/or probationary report and notice of termination completed for Plaintiff ("Exhibit B"). (*See* Doc. 16-2, 16-2). Defendant's citations to Exhibit A all appear in the background section of the motion to dismiss and act to fill in factual gaps such as Plaintiff's job title and dates of her prior employment with USPS. (Doc. 16 at 2–3; *see also* Doc. 21 at 16 (noting Exhibit A was attached as supplementary support)). Exhibit B does similar work. (*Id.* at 3 (referencing Exhibit B for factual background)).

Plaintiff argues that the Court should not consider Exhibit A, as it was not referenced in her Amended Complaint and "is not central to Plaintiff's claims." (Doc. 20 at 2–3); *see Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 460 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."). But Defendant says the Court can consider, or take judicial notice of, the decision because the Amended Complaint refers to it. (Doc. 21 at 16–18). But Defendant does not point to where this happened. For certain, Plaintiff's Amended Complaint notes that she filed a claim with the EEO and that a notice of final action was issued, giving her ninety days to file a civil action in federal court. (Doc. 14 at ¶ 4; *see also id.* at ¶ 31 (stating Plaintiff complied with administrative prerequisites and received notification following her "internal EEO process" that she could file suit)). But the actual order entering judgment and the ALJ's decision are not cited. At best, the notice of final action attached to the Amended Complaint mentions the decision issued by the ALJ. (Doc. 14-1 at 1). The Court declines to consider,

or take judicial notice of, one exhibit that is merely referenced in another exhibit attached to the complaint, when Plaintiff does not expressly cite or refer to it in the pleading.  (*See* Doc. 14).

Exhibit B is different.  Plaintiff cited to the employee evaluation and notice of termination in her Amended Complaint, and the included information is central to understanding Plaintiff's claims.  (Doc. 14 at ¶¶ 13, 14, 15; *see* Doc. 16-2).  Accordingly, Exhibit B is fair game for the Court to consider.

### B.    Race Discrimination Claim

To establish a *prima facie* case of employment discrimination under Title VII, a plaintiff must show that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position in question; and (4) she was treated differently from similarly situated individuals outside of her protected class.  *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004).  But a plaintiff does not have to establish the *prima facie* case in order to survive a motion to dismiss.  *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012).  "The 'plausibility' standard in *Twombly* and *Iqbal* for assessing whether a complaint's factual allegations support its legal conclusions . . . applies to causation in discrimination claims."  *Id*. at 610 (citation omitted).  "Thus, although the Amended Complaint need not present 'detailed factual allegations,' it must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that Defendant discriminated against Plaintiff "with respect to [her] compensation, terms, conditions, or privileges of employment, because of" her race.  *Id.* (citations omitted); *see* 42 U.S.C. § 2000e–2(a)(1).

In other words, a plaintiff does not need to allege "facts specifically indicating that [she] could carry the burden she might ultimately bear" under the burden-shifting framework.  *Ingram v. Regano*, No. 1:19-CV-2926, 2021 WL 1214746, at *9 (N.D. Ohio Mar. 31, 2021), *aff'd*, No. 21-3342, 2022 WL 320216 (6th Cir. Feb. 3, 2022), *and aff'd*, No. 23-3222, 2023 WL 6634262 (6th Cir. Oct. 12, 2023); *see*

*also Savel v. MetroHealth Sys.*, 96 F.4th 932, 943 (6th Cir. 2024) ("A plaintiff does not have to allege specific facts establishing a prima facie case of discrimination in their complaint."). Still, "courts use the *prima facie* elements as guideposts to navigate through a plaintiff's plausible claims of relief." *Downs v. United States Postal Serv.*, No. 3:19-CV-00057-RGJ, 2019 WL 3947921, at *3 (W.D. Ky. Aug. 21, 2019) (citations omitted).

Defendant argues that Plaintiff's Amended Complaint does not meet the requisite standard because it "lacks key allegations and only offers conclusory statements." (Doc. 16 at 5). In particular, Defendant says that Plaintiff failed to "allege any adverse action" or "make any connections between her race and the alleged harm she suffered." (*Id.* at 6). Additionally, Defendant says that Plaintiff "fails to provide any specific details" of discrimination, such as "the dates these incidents occurred, what terms, conditions and privileges of employment she is referencing, what discipline, if any, she received, [or] who was involved." (*Id.*).

### 1.   *Adverse Employment Action*

Plaintiff has sufficiently alleged she suffered at least one adverse employment action for her race discrimination claim. "An adverse employment action involves 'a loss of pay or benefits, a detrimental change in responsibilities, a negative change in the terms or conditions of employment, or some other actual and unfavorable change in job status.'" *McNeal v. City of Blue Ash*, No. 23-3180, — F.4th —, 2024 WL 4262532, at *9 (6th Cir. Sept. 23, 2024) (quoting *Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 786 (6th Cir. 2024)). "A 'bruised ego' or a 'mere inconvenience or an alteration of job responsibilities' is not sufficient to constitute an adverse employment action." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (en banc)). Instead, "[e]xamples of adverse employment actions include firing, failing to promote, reassignment with significantly different responsibilities, a material loss of

benefits, suspensions, and other indices unique to a particular situation." *Putman v. Liberty Mut. Ins. Co.*, No. 1:08-CV-552, 2009 WL 690337, at *2 (S.D. Ohio Mar. 12, 2009) (citing *Smith v. City of Salem*, 378 F.3d 566, 575–76 (6th Cir. 2004)). Other material adverse actions can include a less distinguished title or diminished options for advancement. *Freeman v. Potter*, 200 F. App'x 439, 442 (6th Cir. 2006) (citation omitted). "[T]o challenge a discrete act in a disparate-treatment claim, [Title VII] requires only that a plaintiff show 'some harm respecting an identifiable term or condition of employment.'" *McNeal,* 2024 WL 4262532, at *9 (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024)). In other words, the employment action is adverse if it leaves the employee 'worse off respecting employment terms or conditions.'" *Id.* (quoting *Muldrow*, 601 U.S. at 355).

Defendant contends that Plaintiff has failed to allege a single adverse employment action. But the Court considers at least two. Namely: (1) She was not paid for time worked; and (2) she was disciplined and transferred. (Doc. 14 at ¶¶ 28–29).

### i.     Loss of Pay

Plaintiff's allegation that Defendant failed to pay her for several days sufficiently alleges that Defendant discriminated against Plaintiff with respect to her compensation, terms, conditions, or privileges of employment. She alleged that "[p]rior to her termination, Plaintiff worked several days including President's [D]ay in 2022, as well as traveled to [] different locations which at times were 90 plus minutes from her home [and] was not paid by the Defendant for the time worked although her Caucasian counterparts were paid for similar time worked." (Doc. 14 at ¶ 16). Defendant argues that not being paid for several days does not rise to the level of an adverse employment action, and this allegation is merely a holdover from Plaintiff's now dropped Fair Labor Standards Act claim. (Doc. 21 at 6–7).

Two Sixth Circuit cases say otherwise. In *Plautz v. Potter*, the court held that docking one-

day's worth of wages from a plaintiff's paycheck, which was paid out in the next pay cycle, did not rise to the level of an adverse employment action for a discrimination claim. 156 F. App'x 812, 817–18 (6th Cir. 2005). But in *White v. Burlington Northern & Santa Fe Railway Co.*, the court held that suspending an employee without pay for 37 days was an adverse employment action for a retaliation claim. 364 F.3d 789, 802 (6th Cir. 2004), *aff'd sub nom. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Notably, the court reasoned that "[t]aking away an employee's paycheck for over a month is not trivial, and if motivated by discriminatory intent, it violated Title VII." *Id.* Plaintiff's Amended Complaint falls somewhere in the middle of *Plautz* and *White*. As alleged, not being paid for several days of labor suggests an infliction of direct economic harm. *Erwin v. Honda N. Am., Inc.*, No. 22-3823, 2023 WL 3035355, at *2 (6th Cir. Apr. 21, 2023) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998)) (observing that in the discrimination context, an adverse employment action usually inflicts direct economic harm); *see also* 42 U.S.C. § 2000(e)-2(a) ("It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."). As such, Plaintiff has properly alleged an adverse employment action.

Defendant would have the Court read further into Plaintiff's allegations and assume it was her fault she did not get paid. It submits that USPS has a detailed time keeping policy, and the burden is on Plaintiff to record her time accurately. (Doc. 21 at 7, citing *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) and *Berry v. United States Postal Serv.*, No. 2:20-CV-5327, 2022 WL 1984700 (S.D. Ohio June 6, 2022), *aff'd*, No. 22-3577, 2023 WL 3035371 (6th Cir. Apr. 21, 2023)). Ultimately, says Defendant, it was Plaintiff's responsibility to make sure she was paid correctly. (*Id.*). But the Court must construe the complaint in Plaintiff's favor. *Twombly*, 550 U.S. at 570. Questions of Plaintiff's action or nonaction taken under a timekeeping procedure are not best

8

considered on a motion to dismiss. Simply put, Plaintiff's Amended Complaint has done enough to allege an adverse employment action for her race discrimination claim.

ii.      *Transfer*

The Court now considers the circumstances surrounding Plaintiff's transfer. These allegations evoke a domino effect. Plaintiff says that her work scanner did not properly record her "work, route time, and other parts of her employment." (Doc. 14 at ¶ 27). And her supervisor, a white man, knew it was malfunctioning but refused to replace it. (*Id.*). Plaintiff alleges that even though her scanner was malfunctioning, it was used to "substantiat[e] her performance." (*Id.* at ¶ 15). Then, she was handed a termination notice that was "effective immediately" based, in part, on unsatisfactory performance. (*Id.* at 14 ¶¶ 15, 27–29; *see* Doc. 16-2). Next, the Postmaster, a white woman, gave her an ultimatum that she could either be transferred, or the notice would be enforced. (Doc. 14 at ¶¶ 17, 19).

To the extent that Plaintiff's unsatisfactory rating and termination notice based on alleged faulty data can be considered discipline, "discipline, whether warranted or not, [does] not constitute a material adverse change in the terms of employment in the discrimination context" absent a significant change in employment conditions or material consequence. *Lee v. Cleveland Clinic Found.*, 676 F. App'x 488, 494 (6th Cir. 2017); *Edwards v. City of Cincinnati*, No. 1:22-CV-503, 2023 WL 145898, at *3 (S.D. Ohio Jan. 10, 2023); *Williams v. AP Parts, Inc.*, 252 F. Supp. 2d 495, 497–98 (N.D. Ohio 2003) (citing *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999)). Here, Plaintiff alleges that the discipline she suffered led to her transfer. (Doc. 14 at 28–29). In general, "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." *Kocsis*, 97 F.3d at 885–86; *Timmons v. Boehringer Ingelheim Corp.*, 132 F. App'x 598, 600 (6th Cir. 2005) ("A transfer at no loss of title, pay or benefits does not amount to an adverse employment action."). But absent a salary or work hour change, the reassignment "can nonetheless be considered

9

an adverse employment action where there is evidence that the employee received a 'less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Spees*, 617 F.3d at 391; *see also Muldrow*, 601 U.S. at 350 ("Although an employee must show some harm from a forced transfer to prevail in a Title VII suit, she need not show that the injury satisfies a significance test.").

In her Amended Complaint, Plaintiff fails to allege that her transfer resulted in any of these or other harms. So, as it stands, Plaintiff has not alleged that her transfer to a different facility was an adverse employment action. *See, e.g.*, *Edwards*, 2023 WL 145898, at *3 (holding a plaintiff did not allege an adverse employment action when he failed to allege an adverse change in the terms and conditions of his employment in connection with a transfer to a new territory); *Brandal v. Columbus City Sch. Dist.*, No. 2:09-CV-680, 2011 WL 3627387 (S.D. Ohio Aug. 17, 2011) (dismissing a teacher's ADEA claim when he failed to allege that his reassignment to a different school was objectively intolerable). Yet, if Plaintiff can allege that the transfer was disadvantageous, the transfer, if motivated by discriminatory intent, may ultimately be a Title VII violation. *See Muldrow*, 601 U.S. at 354–55. Therefore, in the interests of justice, the Court **GRANTS** Plaintiff leave to amend her complaint to cure this deficiency.

### 2. *Differing Treatment*

Next, Plaintiff's allegations of differing treatment compared to her white coworkers is sufficient to state a Title VII race discrimination claim. Contrary to Defendant's argument, Plaintiff does more than allege instances of unfair conduct. (Doc. 16 at 10). She offers several examples of when she was subject to different terms and conditions of employment than her white counterparts: her scanner did not record her work properly and was not replaced by Coburn Morgan, her white supervisor, even though her white coworkers received replacements; she was not paid for time worked for several days

in February 2022 when her white coworkers were paid for similar time; and she was disciplined and transferred by Tracy Hunt, her white supervisor, when her white coworkers were not. (Doc. 14 at ¶¶ 15–16, 27–28). Though these allegations are admittedly brief, on the whole, Plaintiff has done enough for the Court to draw a reasonable inference of race-based discrimination. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002) (finding a complaint gave fair notice of the basis for the plaintiff's discrimination claims when it detailed events leading to plaintiff's termination, provided relevant dates, and included the ages and nationalities of some relevant persons); *Keys*, 684 F.3d at 610 (finding a plaintiff's complaint sufficient when it detailed specific events when she was treated differently than her white counterparts, and it identified supervisors and relevant persons by race and name or title); *Katib v. USF Holland LLC*, 640 F. Supp. 3d 788, 794 (N.D. Ohio 2022) (citing *Abdalla v. Tenn. Dep't of Corr.*, No. 2:20-CV-02041, 2021 WL 27305, at *7 (W.D. Tenn. Jan. 4, 2021)) (finding a complaint provided the "necessary factual context" when the plaintiff alleged non-Arab and non-Middle Eastern individuals were treated differently than him); *cf. Carmichael v. City of Cleveland*, 571 F. App'x 426 (6th Cir. 2014) (dismissing a Section 1981 claim for race discrimination when the complaint alleged only that city officials made comments about a missing person's drug use and refused to fill out a missing-persons report); *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015) (finding a complaint did not create a reasonable inference that interviewers were motivated by bias when the plaintiff did not allege a factual basis for what happened during the interview and could only speculate as to why she was not hired); *Ogbonna-McGruder v. Austin Peay State Univ.*, No. 3:21-CV-00506, 2023 WL 3572891, at *12–13 (M.D. Tenn. May 19, 2023) (dismissing a race discrimination claim when the plaintiff did not allege her reassignment and replacement by a white teacher was racially motivated), *aff'd*, 91 F.4th 833 (6th Cir. 2024), *cert. denied*, 144 S. Ct. 2689 (2024).

11

Accordingly, as to Plaintiff's Title VII claim for race-based discrimination based on her loss of pay, Defendant's Motion to Dismiss is **DENIED**. The portion of the Motion to Dismiss that concerns Plaintiff's transfer is **HELD IN ABEYANCE**, giving Plaintiff time to amend her complaint.

### C. Age Discrimination Claim

"To establish a prima facie case of age discrimination, the ADEA plaintiff 'must show that: (1) she was over 40 years old; (2) she suffered an adverse employment action; (3) she was qualified for the position she held; and (4) she was either replaced by a person outside the protected class or treated differently than similarly-situated individuals.'" *Beckett v. KHB Lonestar LLC*, No. 2:23-CV-520, 2024 WL 1930829, at *3 (S.D. Ohio May 2, 2024) (citing *House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 462 (6th Cir. 2015)). An ADEA claim is held to the same pleading standard as that of a Title VII race discrimination claim. That is, Plaintiff's complaint "need not present 'detailed factual allegations,'" but "it must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that Defendant discriminated against Plaintiff with respect to her age. *House*, 630 F. App'x at 463 (citing *Keys*, 684 F.3d at 610); *Iqbal*, 556 U.S. at 663–64; *Twombly*, 550 U.S. at 570; *see also McNeal*, 2024 WL 4262532, at *9 (noting Title VII's generally applicable statutory language is mirrored in the ADEA).

Defendant again challenges the sufficiency of Plaintiff's allegations. He argues that Plaintiff failed to plead that she was subjected to an adverse action or that her younger coworkers were treated better in comparison. (Doc. 16 at 12–14). Plaintiff's allegations concerning her age are sparser than those concerning her race. She alleges she was treated differently because of her age on two occasions: (1) when her route time was compared to that of a younger employee to whom the route previously belonged; and (2) when she received less training than a younger coworker hired at the same time as her. (Doc. 14 at ¶¶ 15, 27). As pled, neither of these instances sufficiently allege an ADEA claim.

As to the first, Plaintiff says she was assigned a mail route previously worked by a younger employee that "had not been inspected in the previous several years." (*Id.* at ¶ 15). She requested that the route be reinspected to account for growth, but that request was denied. (*Id.* at ¶ 27). Plaintiff claims that her route time was "compared to [the] younger" employee and "used as a basis for transfer." (*Id.* at ¶¶ 15, 27). Notably, Plaintiff does not say that she was treated differently than the younger employee. For example, she does not allege that a younger employee's request for a route to be reinspected was granted at the same time that hers was denied. Rather, she argues that differing treatment occurred when Defendant held her to the same standards as the past employee "despite the route's growth." (Doc. 20 at 5). If anything, then, Plaintiff finds issue with Defendant treating her *the same* as her younger predecessor. But the ADEA "does not require an employer to accord special treatment to employees over forty years of age[, but to treat] an employee's age . . . in a neutral fashion." *Slenzka v. Landstar Ranger, Inc.*, 122 F. App'x 809, 813 (6th Cir. 2004) (quoting *Parcinski v. Outlet Co.*, 673 F.2d 34, 37 (2d Cir. 1982)) (alteration in original). And, ultimately, Plaintiff has not alleged that Defendant's decision to not reinspect her route was an "adverse change in the terms or conditions of . . . employment because of [the] employer's conduct.'" *Policastro*, 297 F.3d at 539 (citation omitted); *cf. Ortiz v. Hershey Co.*, No. 11-3123-STA-TMP, 2013 WL 5538657, at *9 (W.D. Tenn. Oct. 7, 2013) (holding increased workload did not constitute a materially adverse employment action), *aff'd*, 580 F. App'x 352 (6th Cir. 2014). Simply put, this is not an adverse employment action.

As to her allegations about being trained less than a younger coworker, "[c]ourts have held that for a failure to train to constitute an adverse action, an employee must show that '[her] inability to attend such training had [a] material impact on the terms and conditions of [her] employment.'" *Merriweather v. United States Steel Corp.*, No. 2:18-CV-10664, 2019 WL 4072645 (E.D. Mich. July 19, 2019) (citation omitted), *report and recommendation adopted*, No. 18-10664, 2019 WL 4054926

(E.D. Mich. Aug. 28, 2019); *see also Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 768 (6th Cir. 2008) ("Defendant's failure to provide Plaintiff with extra training does not constitute an adverse employment action under [the definition of adverse employment actions in Title VII discrimination cases]."); *Johnson v. United Parcel Serv., Inc.*, 117 F. App'x 444, 450 (6th Cir. 2004). Plaintiff has not alleged such an impact or any other harm related to her training, and the Court cannot infer one from her brief mention in the pleading. Relatedly, more so than her allegations of race discrimination, Plaintiff's allegation of age discrimination is arguably threadbare—alleging only that a younger employee hired at the same time as her received more training than she did. (Doc. 14 at ¶¶ 15, 27); *see Smith v. Wrigley Mfg. Co., LLC*, 749 F. App'x 446 (6th Cir. 2018) (dismissing an ADEA claim when Plaintiff did not offer, among other things, the names and qualifications of younger employees who were treated differently). Simply put, Plaintiff has not sufficiently alleged a claim under the ADEA.

However, because the Court has found justice favors allowing Plaintiff to file a Second Amended Complaint, Plaintiff has the opportunity to cure her deficient ADEA claim based on training as well. Therefore, Court **HOLDS** the portions of the Motion to Dismiss concerning her age discrimination claim **IN ABEYANCE**, pending Plaintiff's possible amendment.

### D. State Law Claim

One final point. In the first paragraph of her Amended Complaint, Plaintiff also says she brings claims under Title 4112 of the Ohio Revised Code. (Doc. 14 at ¶ 1; *see also id.* at ¶¶ 3 (alleging the Court has jurisdiction over Plaintiff's claims under Ohio's statutory law pursuant to 28 U.S.C. § 1367), 6–8 (alleging Plaintiff is an "employee" and Defendant is an "employer" as defined by the Ohio Revised Code)). Plaintiff does not address the Ohio Revised Code when she alleges her claims of race and age discrimination or when she specifies her relief sought. (*See id.* at ¶¶ 25–37; *id.* at 6).

While Defendant's Motion to Dismiss seeks to dismiss this entire action for failure to state a

14

claim, it also does not address Plaintiff's claims under state law.  (*See* Doc. 16).  But "employment discrimination claims under the Ohio discrimination statute mirror employment discrimination claims under Title VII."  *Savel v. MetroHealth Sys.*, 96 F.4th 932, 943 (6th Cir. 2024) (holding because the plaintiffs sufficiently stated a claim under Title VII, they sufficiently stated a claim under Ohio Revised Code § 4112).  The same is true for state law age discrimination claims and the ADEA.  *Buford v. Am. Red Cross*, No. 3:24 CV 91, 2024 WL 2215942, at *2 (N.D. Ohio May 16, 2024) (analyzing an age discrimination claim brought pursuant to Ohio Revised Code § 4112).  Therefore, in addressing the sufficiency of Plaintiff's claims under Title VII and the ADEA, the Court also has addressed the sufficiency of claims under Ohio Revised Code § 4112.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 16) is **DENIED in part.**  Plaintiff's race discrimination claim based on loss of pay shall proceed.  The Court **HOLDS** the remainder of the Motion to Dismiss **IN ABEYANCE** consistent with this Order.  Plaintiff may file a Second Amended Complaint **within fourteen (14) days**.  Finally, because Plaintiff's Amended Complaint is the operative complaint, Defendant's first motion to dismiss (Doc. 13) is **DENIED as moot.**


        IT IS SO ORDERED.


Date:  September 26, 2024                    /s/ Kimberly A. Jolson
                                            KIMBERLY A. JOLSON
                                            UNITED STATES MAGISTRATE JUDGE

15