IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TAMARA HINKLE-MOORE,**

      **Plaintiff,**

  v.                                Civil Action 2:24-cv-262
                                       Magistrate Judge Kimberly A. Jolson

**POSTMASTER GENERAL
LOUIS DEJOY,**

      **Defendant.**

## SUPPLEMENTAL OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 16). For the following reasons, the Motion is **DENIED**. The Court **SETS** Defendant's deadline to answer or otherwise respond to the Second Amended Complaint (Doc. 23) as **November 6, 2024.**

**I.    BACKGROUND**

This matter, for which the parties consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), alleges employment discrimination against Louis DeJoy, Postmaster General of the United States Postal Service ("USPS"). (*See generally* Doc. 23 (second amended complaint)). In brief, Plaintiff Tamara Hinkle-Moore claims she suffered discrimination at work because of her race and age. (*Id.* (alleging violations of Title VII of the Civil Rights Act, the Age Discrimination in Employment Act ("ADEA"), and Title 4112 of the Ohio Revised Code)); *see* 42 U.S.C. §§ 2000(e), *et seq.*; 29 U.S.C. §§ 626, *et seq.*; Ohio Rev. Code § 4112, *et seq.*

On January 8, 2022, Defendant hired and assigned Plaintiff, a Black woman born in 1964, to work at a post office in Pickerington, Ohio. (Doc. 23 at ¶¶ 10–11). Though she does not expressly

name her position, it seems that Plaintiff worked as a mail carrier. The position had a three-month probationary period (*id.* at ¶ 13), and Plaintiff alleges that Defendant discriminated against her on the basis of race and age during this trial time. Examples include: (1) Plaintiff's younger white coworkers received more training than she did; (2) Defendant refused to reinspect Plaintiff's carrier route that was previously assigned to another employee and then compared Plaintiff's productivity to that younger, white employee; (3) Defendant made Plaintiff provide her electronic passwords to other white employees who used them without discipline; (4) Plaintiff's work scanner did not properly record her work, route time, and "other parts of her employment" because her supervisor refused to replace it even though he replaced her white coworkers' scanners; (5) Defendant relied on the improperly recorded data when evaluating Plaintiff even when other younger and white coworkers' improperly recorded data was not considered; and (6) Defendant did not pay Plaintiff for several days she worked even though her white coworkers were paid for similar time. (*Id.* at ¶¶ 15–16, 22–23, 29).

After the probationary period ended on April 19, 2022, the Postmaster of the Pickerington Post Office ("the Postmaster"), a white woman, notified Plaintiff that her performance and attendance were unsatisfactory, and she would be terminated. (*Id.* at ¶ 13; *see also* Doc. 16-2 at 2 (notice of termination "effective immediately upon [Plaintiff's] receipt")). Plaintiff then contacted the Postmaster who told her that "she was indeed being fired unless she agreed to be transferred to a different facility." (Doc. 23 at ¶¶ 17, 19). Plaintiff agreed, and Defendant transferred her to a facility in nearby Columbus. (*Id.* at ¶ 19). When she was transferred, Plaintiff says she lost her seniority that allowed her to bid on particular routes or have certain days off. (*Id.* at ¶ 20).

At base, Plaintiff claims Defendant discriminatorily disciplined and transferred her when white and younger employees were not treated that way. (*Id.* at ¶¶ 23–24, 30–31). Plaintiff filed a complaint with the USPS Equal Opportunity Office ("EEO"), which issued a Notice of Final Action on October

2

24, 2023. (*See* Doc. 23-1). Plaintiff then filed this lawsuit. (*See* Doc. 1). Plaintiff seeks compensatory damages under Title VII, the ADEA, and Ohio law; costs; and fees. (Doc. 23 at 7). Defendant subsequently filed a motion to dismiss Plaintiff's Amended Complaint in its entirety for failure to state a claim upon which relief may be granted. (Doc. 16; *see* Doc. 20 (Plaintiff's response), Doc. 21 (Defendant's reply)).

The Court partially ruled on Defendant's motion to dismiss. (*See* Doc. 22). Specifically, the Court allowed Plaintiff's race discrimination claim based on her alleged loss of pay to proceed. (*Id.*). It held the remainder of the motion to dismiss in abeyance, allowing Plaintiff time to amend her complaint to fix deficiencies with the remainder of her race discrimination claim and her age discrimination claim. (*Id.*). Plaintiff has now filed her Second Amended Complaint (Doc. 23).

## II.   STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a complaint "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555; *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (noting that a plaintiff must give specific, well-pleaded facts, not just conclusory allegations). In other words, while "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" rule, the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Iqbal*, 556 U.S. at 677–78 (quotation marks and citations omitted).

### III. DISCUSSION

The Court considers Plaintiff's race discrimination claim concerning her transfer and her age discrimination claim in turn. In doing so, the Court **INCORPORATES** its previous order (Doc. 22), and **SUPPLEMENTS** it with the following.

#### A. Race Discrimination Claim

To establish a *prima facie* case of employment discrimination under Title VII, a plaintiff must show that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position in question; and (4) she was treated differently from similarly situated individuals outside of her protected class. *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004). But a plaintiff does not have to establish the *prima facie* case in order to survive a motion to dismiss. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). "The 'plausibility' standard in *Twombly* and *Iqbal* for assessing whether a complaint's factual allegations support its legal conclusions . . . applies to causation in discrimination claims." *Id*. at 610 (citation omitted). "Thus, although the Amended Complaint need not present 'detailed factual allegations,' it must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that Defendant discriminated against Plaintiff "with respect to [her] compensation, terms, conditions, or privileges of employment, because of" her race. *Id*. (citations omitted); *see* 42 U.S.C. § 2000e–2(a)(1).

In other words, a plaintiff does not need to allege "facts specifically indicating that [she] could carry the burden she might ultimately bear" under the burden-shifting framework. *Ingram v. Regano*, No. 1:19-CV-2926, 2021 WL 1214746, at *9 (N.D. Ohio Mar. 31, 2021), *aff'd*, No. 21-3342, 2022 WL 320216 (6th Cir. Feb. 3, 2022), *and aff'd*, No. 23-3222, 2023 WL 6634262 (6th Cir. Oct. 12, 2023); *see*

*also Savel v. MetroHealth Sys.*, 96 F.4th 932, 943 (6th Cir. 2024) ("A plaintiff does not have to allege specific facts establishing a prima facie case of discrimination in their complaint."). Still, "courts use the *prima facie* elements as guideposts to navigate through a plaintiff's plausible claims of relief." *Downs v. United States Postal Serv.*, No. 3:19-CV-00057-RGJ, 2019 WL 3947921, at *3 (W.D. Ky. Aug. 21, 2019) (citations omitted).

The Court previously allowed Plaintiff to amend her complaint to address pleading deficiencies concerning her transfer. (*See* Doc. 23 at ¶¶ 17, 19–20, 24; *see* Doc. 22 at 9–10 (describing Plaintiff's allegations and the events leading to her transfer)). In that order, the Court highlighted that "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." *Kocsis*, 97 F.3d at 885–86; *Timmons v. Boehringer Ingelheim Corp.*, 132 F. App'x 598, 600 (6th Cir. 2005) ("A transfer at no loss of title, pay or benefits does not amount to an adverse employment action."). But absent a salary or work hour change, the reassignment "can nonetheless be considered an adverse employment action where there is evidence that the employee received a 'less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Spees*, 617 F.3d at 391. The Court pointed out that in her First Amended Complaint, Plaintiff failed to allege that her transfer resulted in any of these or other harms. (Doc. 22 at 9–10). So, Plaintiff had not alleged that her transfer to a different facility was an adverse employment action.

By contrast, Plaintiff's Second Amended Complaint alleges harm connected with her transfer. She alleges that when she was transferred to the Columbus facility "she lost her seniority. As a result of the loss of seniority, Plaintiff could no longer bid on certain routes or have certain days off." (Doc. 23 at ¶ 20). At the pleadings stage, this is sufficient to allege an adverse action. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 350 (2024) ("Although an employee must show some harm from a forced

transfer to prevail in a Title VII suit, she need not show that the injury satisfies a significance test.").

Accordingly, and because the Court has already addressed the sufficiency of the remaining aspects of this claim (Doc. 22 at 5–12), the Court **DENIES** Defendant's Motion to Dismiss with respect to Plaintiff's race discrimination claims. *See Savel v. MetroHealth Sys.*, 96 F.4th 932, 943 (6th Cir. 2024) (holding because the plaintiffs sufficiently stated a claim under Title VII, they sufficiently stated a claim under Ohio Revised Code § 4112).

### B. Age Discrimination Claim

"To establish a prima facie case of age discrimination, the ADEA plaintiff 'must show that: (1) she was over 40 years old; (2) she suffered an adverse employment action; (3) she was qualified for the position she held; and (4) she was either replaced by a person outside the protected class or treated differently than similarly-situated individuals.'" *Beckett v. KHB Lonestar LLC*, No. 2:23-CV-520, 2024 WL 1930829, at *3 (S.D. Ohio May 2, 2024) (citing *House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 462 (6th Cir. 2015)). An ADEA claim is held to the same pleading standard as that of a Title VII race discrimination claim. That is, Plaintiff's complaint "need not present 'detailed factual allegations,'" but "it must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that Defendant discriminated against Plaintiff with respect to her age. *House*, 630 F. App'x at 463 (citing *Keys*, 684 F.3d at 610); *Iqbal*, 556 U.S. at 663–64; *Twombly*, 550 U.S. at 570; *see also McNeal*, 2024 WL 4262532, at *9 (noting Title VII's generally applicable statutory language is mirrored in the ADEA).

The Court previously noted several deficiencies with Plaintiff's age discrimination claims including: (1) her allegation that her supervisor denied her request to reinspect her route then compared her route time to a younger, former employee did not properly alleged claim under the ADEA; (2) her allegation that a younger employee received more training than she did failed to allege any material

6

impact on the terms or conditions of her employment; and (3) her allegations related to her age generally lacked factual specificity to support of her claim. (Doc. 22 at 12–14). The Court finds that Plaintiff's Second Amended Complaint fails to cure these defects, though Plaintiff's ADEA claim may proceed for other reasons.

To begin, Plaintiff amended the portion of her complaint alleging that Defendant refused to reinspect her mail route. She again alleges that the route was previously worked by a younger employee, Defendant compared her route time to that employee's, and Defendant used her route time as a basis for her transfer. (*See* Doc. 23 at ¶¶ 15, 22). The Court previously noted this did not properly allege an adverse action. (Doc. 22 at 13). In her Second Amended Complaint, Plaintiff briefly adds that Defendant did not deny other younger employees' requests to have their routes reinspected. (Doc. 23 at ¶ 15, 22). However, this does not address the Court's previous discussion that comparing Plaintiff's route time to a younger employee for the same route, even if it was used as a basis for transfer, did not allege a claim under the ADEA. (Doc. 22 at 13 (discussing that the ADEA does not require an employer accord special treatment for employees over the age of forty years old)). So, ultimately, Plaintiff still has not alleged these circumstances present an "adverse change in the terms or conditions of . . . employment because of [the] employer's conduct.'" *Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002) (citation omitted); *cf. Ortiz v. Hershey Co.*, No. 11-3123-STA-TMP, 2013 WL 5538657, at *9 (W.D. Tenn. Oct. 7, 2013) (holding increased workload did not constitute a materially adverse employment action), *aff'd*, 580 F. App'x 352 (6th Cir. 2014). Neither is the fact that Plaintiff's route may have been more work than the routes of the younger employees an adverse employment action. *See Dickson v. Green Dot Pub. Sch. Tenn.*, No. 2:22-cv-02070, 2022 WL 4285554, at *3 (W.D. Tenn. June 27, 2022) ("Both the Sixth Circuit and other courts within it have determined that allegedly inequitable job duties . . . do[es] not constitute materially adverse employment actions

under the ADEA or other employment discrimination laws."), *report and recommendation adopted*, No. 2:22-cv-2070, 2022 WL 3931462 (W.D. Tenn. Aug. 31, 2022). And Plaintiff's new allegation that Defendant reinspected the routes of younger employees does not change this and also generally lacks factual specificity. *See, e.g.*, *Smith v. Wrigley Mfg. Co., LLC*, 749 F. App'x 446 (6th Cir. 2018); *Downs v. Bel Brands USA, Inc.*, 613 F. App'x 515 (6th Cir. 2015). In short, on these allegations alone, Plaintiff has failed to properly allege a claim of age discrimination.

Next, concerning her training, Plaintiff alleges that "[a]lthough hired at the same time a Caucasian male under the age of 40 received more training than Plaintiff. Plaintiff's lack of training resulted in her transfer and loss of seniority." (Doc. 23 at ¶ 15; *see also id.* at ¶ 22). As the Court previously noted, "[c]ourts have held that for a failure to train to constitute an adverse action, an employee must show that '[her] inability to attend such training had [a] material impact on the terms and conditions of [her] employment.'" *Merriweather v. United States Steel Corp.*, No. 2:18-CV-10664, 2019 WL 4072645 (E.D. Mich. July 19, 2019) (citation omitted), *report and recommendation adopted*, No. 18-10664, 2019 WL 4054926 (E.D. Mich. Aug. 28, 2019); *see also Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 768 (6th Cir. 2008) ("Defendant's failure to provide Plaintiff with extra training does not constitute an adverse employment action under [the definition of adverse employment actions in Title VII discrimination cases]."); *Johnson v. United Parcel Serv., Inc.*, 117 F. App'x 444, 450 (6th Cir. 2004).

Here, Plaintiff arguably gestures at such a material impact on the terms and conditions of her employment when she alleges the lack of training resulted in her transfer. But this allegation still lacks the requisite factual specificity for the Court to draw a reasonable inference of age discrimination. It is wholly unclear, from her brief allegation, how Plaintiff's training resulted in her transfer and loss of seniority. For example, she provides no facts linking her lack of training to her transfer or her

unsatisfactory evaluation. (*See* Doc. 16-2 (the notice citing unsatisfactory performance and unsatisfactory attendance as the reasons for Plaintiff's termination (which turned into a transfer))). Nor does she say what the training involved, so the Court could infer how the training may have impacted her performance. In other words, on these allegations alone, Plaintiff fails to allege "sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that Defendant discriminated against Plaintiff with respect to her age. *House*, 630 F. App'x at 463 (citing *Keys*, 684 F.3d at 610); *see also Iqbal*, 556 U.S. at 663–64; *Twombly*, 550 U.S. at 570.

Yet, Plaintiff's Second Amended Complaint differs from her First Amended Complaint in another relevant way. Plaintiff previously alleged that she reported her scanner was not working but her white supervisor, Coburn Morgan, refused to replace it at the same time that he replaced the scanners belonging to other white coworkers. (Doc. 14 at ¶¶ 15, 27). That data was used to substantiate Plaintiff's performance and formed the basis for discipline and subsequent transfer by her white supervisor, Tracy Hunt. (*Id.*). The Court previously noted that this allegation, albeit brief, provided details that gave Defendant fair notice of her claims. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002) (finding a complaint gave fair notice of the basis for the plaintiff's discrimination claims when it detailed events leading to plaintiff's termination, provided relevant dates, and included the ages and nationalities of some relevant persons); *Keys*, 684 F.3d at 610 (finding a plaintiff's complaint sufficient when it detailed specific events when she was treated differently than her white counterparts, and it identified supervisors and relevant persons by race and name or title); *Katib v. USF Holland LLC*, 640 F. Supp. 3d 788, 794 (N.D. Ohio 2022) (citing *Abdalla v. Tenn. Dep't of Corr.*, No. 2:20-CV-02041, 2021 WL 27305, at *7 (W.D. Tenn. Jan. 4, 2021)) (finding a complaint provided the "necessary factual context" when the plaintiff alleged non-Arab and non-Middle Eastern individuals were treated

differently than him).  As discussed above, because Plaintiff has alleged her discipline and transfer resulted in loss of seniority, the Court is allowing her race discrimination claim to proceed on these allegations.

Now Plaintiff says that her age also factored into these circumstances and that younger employees were not treated similarly.  She states, "[w]hen other younger [employees'] scanners did not properly record their work, Defendant did not use that data to evaluate their performance." (Doc. 23 at ¶ 25; *see also id.* at ¶ 15 ("Defendant did not rely on improperly documented data to substantiate other younger . . . employees' performance."))  Much like her race discrimination claim, these allegations contain few factual details.  But unlike her allegations concerning her white coworkers' treatment, Plaintiff does not allege that younger employees' requests for working scanners were granted at the same time hers was denied.  (*See* Doc. 22 at 9–10 (discussing the domino falling nature of the events leading to Plaintiff's discipline and transfer)).  In short, this is a borderline question.

Yet Plaintiff still alleges that (1) she suffered an adverse action, and (2) younger employees were treated differently than she was.  Specifically, she alleges that younger employees, which she defines elsewhere as under 40, received favorable treatment when their scanner data was inaccurate. (Doc. 23 at ¶ 22).  Their data was not used to evaluate their performance, whereas Plaintiff's inaccurate data was, leading to her transfer and loss of seniority.  (*Id.* at ¶¶ 22–23, 29).  Construing the complaint in Plaintiff's favor, this allows the Court to, "informed by its 'judicial experience and common sense, . . . draw the reasonable inference'" that Defendant discriminated against Plaintiff with respect to her age.  *House*, 630 F. App'x at 463 (citation omitted); *Beckett*, No. 2024 WL 1930829, at *3 (noting that citing an example of younger employees receiving favorable treatment helped to properly allege a claim under the ADEA).  Simply put, at the motion to dismiss stage, Plaintiff has done enough—though just barely.

10

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss with respect to Plaintiff's age discrimination claims as well. *See Buford v. Am. Red Cross*, No. 3:24 CV 91, 2024 WL 2215942, at *2 (N.D. Ohio May 16, 2024) (noting claims brought under Ohio Revised Code § 4112 alleging discrimination on the basis of age "are analyzed under the same standards as federal claims brought under . . . the [ADEA]" on a motion to dismiss).

***

In sum, Plaintiff's race discrimination claims and age discrimination claims may proceed. Plaintiff's Second Amended Complaint (Doc. 23) is now the operative complaint in this action. Defendant shall have two weeks in which to answer or otherwise respond to the Second Amended Complaint.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 16) is **DENIED**.  The Court **SETS** Defendant's deadline to answer or otherwise respond to the Second Amended Complaint (Doc. 23) as **November 6, 2024.**

IT IS SO ORDERED.

Date:  October 23, 2024                               /s/ Kimberly A. Jolson
                                                                        KIMBERLY A. JOLSON
                                                                        UNITED STATES MAGISTRATE JUDGE